UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WANDA JEAN DARROW and DONNA
KAY HANNAHS,

    Plaintiffs,

v.

CITY OF POTTERVILLE, et. al.

    Defendants.

                          /

File No. 1:08-CV-455

HON. ROBERT HOLMES BELL

**O P I N I O N**

This matter is before the Court on Defendants City of Potterville and Potterville City Council's motion for summary judgment. (Dkt. No. 3.) Plaintiffs have filed a response to the motion for summary judgment. (Dkt. No. 7.) For the reasons stated herein, Defendants' motion shall be granted with respect to Count IV of the complaint, and denied with respect to Counts I, II, and III.[1]

Defendants also submitted a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure because Plaintiffs have filed a complaint that is subject to claim preclusion. (Dkt. No. 4.) Subsequently, Defendants requested that the Court hold this motion for sanctions in abeyance. (Dkt. No. 13.)

---

[1] The Court notes that the motion for summary judgment was filed on behalf Defendants City of Potterville and Potterville City Council. Defendant Timothy Sadowski has not responded to the complaint.

I.

According to the complaint, Plaintiffs, both women, were employed by Defendant City of Potterville ("City") as treasurers. Plaintiff Hannahs ("Hannahs") was hired in 2004, and terminated and re-hired in 2005. Plaintiff Darrow was hired in August 2006. In April, 2006, Defendant Sadowski became the supervisor for Hannahs. The complaint alleges that Hannahs was treated differently by City than similarly situated males and that City's management team made derogatory comments about her gender. The complaint also alleges that, in 2006, she complained to the management team about these comments, and made an internal complaint regarding discrimination and sexual harassment regarding Defendant Sadowski.

After Plaintiff Darrow ("Darrow") was hired, Defendant Sadowski became her supervisor. In 2006, Darrow also made complaints to City Councilmembers and to City regarding discrimination and sexual harassment from Defendant Sadowski. Plaintiffs also met with the Michigan State Police to report suspected illegal activities involving Defendants and the alleged discriminatory and retaliatory acts of Defendants. Plaintiffs allege that these actions led to "retaliation" against them, including being unfairly disciplined and placed on administrative leave in November 2006. Plaintiffs allege that Defendant Sadowski placed Plaintiffs on paid administrative leave on November 3, 2006, and Defendants placed Plaintiffs on unpaid administrative leave on November 30, 2006. On May 14, 2007, Defendant Sadowski "constructively fired" Darrow by revising her job description to make

her unqualified for the job. On May 14, 2007, Defendants terminated Hannahs, allegedly based on her dishonesty regarding a document from 2005. The complaint alleges that Plaintiffs timely filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"), though the complaint does not specify when this charge was filed. Plaintiffs state that they received notice letters of their right to sue on February 19, 2008.

Plaintiffs filed a four-count complaint in this Court against Defendants on May 16, 2008, alleging sex discrimination (Count I) and retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.*, in addition to deprivation of employment without notice or opportunity to respond in violation of the due process requirements of the Fourteenth Amendment (Count III), and retaliatory discharge in violation of the First Amendment (Count IV). Plaintiffs seek relief pursuant to 42 U.S.C. § 1983.

Defendants have moved for summary judgment solely on the basis of claim preclusion.[2] Defendants contend that Plaintiffs previously filed similar claims based on the

---

[2]Plaintiffs use the term "res judicata" in their response to Defendants' motion. This Court prefers to use the terms claim preclusion and issue preclusion rather than *res judicata*. As instructed by the Supreme Court:

> Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar . . . . In order to avoid confusion resulting from the two uses of "res judicata," this opinion utilizes the term "claim preclusion" to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit.

(continued...)

3

same events in Michigan circuit court. Defendants attach to their motion a copy of a verified complaint filed by Plaintiffs against Defendants in Eaton County Circuit Court on November 6, 2006. (Dkt. No. 3, Defs.' Mot. for Summ. J., Ex. A.) Defendants allege in their briefing that the state court denied a motion by Plaintiffs to amend their complaint to add additional claims, but allowed amendment to include claims for sexual discrimination, discharge in violation of public policy and breach of an implied employment contract. Defendants have provided what appears to be a copy of an unsigned draft of a first amended verified complaint, which, according to Defendants, was filed in state court in November 2007.[3] (Dkt. No. 3, Ex. C.)

Defendants also contend that the Michigan state court ultimately entered a judgment of no cause of action against Plaintiffs on the basis of a jury verdict following a trial in January and February of 2008. Defendants have provided a copy of the state court judgment dated February 13, 2008. (Dkt. No. 3, Ex. D.)

In response, Plaintiffs contend that claim preclusion does not apply to the complaint filed in the instant case because Plaintiffs had not yet received their "right to sue" letters from

---

[2](...continued)
*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (citations omitted). *See Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.,* 126 F.3d 849, 852 (6th Cir. 1997) (distinguishing *res judicata* and expressing the "hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms, whose meanings have become so convoluted") (quoting *Barnes v. McDowell*, 848 F.2d 725, 728 n.5 (6th Cir. 1988)).

[3]The document provided by Defendants does not match the description in Defendants' briefing. It is dated July 2007 (not November 2007), it is unsigned, the text is incomplete, and it contains no filing stamp or other indication of having been filed with a court.

the United States Department of Justice. Plaintiffs attach to their response brief copies of letters dated February 14, 2008, from the United States Depart of Justice entitled "Notice of Right to Sue within 90 Days" regarding charges against the City of Potterville. (Dkt. No. 7, Exs. 1, 1B.)

## II.

### A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, LLC v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Defendants' sole asserted basis for summary judgment is that Plaintiffs' claims are precluded under the doctrine of claim preclusion.

### B. Claim Preclusion

Federal courts are required to give a state court judgment the same preclusive effect it would be given under the laws of the state that rendered the decision. 28 U.S.C. § 1738 ("The records and judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage

5

in the courts of such State . . . from which they are taken."); *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004). Because the judgment in the original action was entered in Michigan state court, this Court is bound to give preclusive effect to that judgment to the same extent that it would be given by a Michigan court. According to Michigan law, claim preclusion "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Executive Arts Studio*, 391 F.3d at 795 (quoting *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004)).

Plaintiffs do not argue that the prior state proceeding involved different parties; the state complaint submitted by Defendants indicates that all of the parties involved in the instant case were involved in the state court proceedings. Also, the state court judgment provided by Defendants indicates that the state action was adjudicated on the merits. Thus, the sole issue is whether "the matter in the second case was, or could have been, resolved in the first." *Id.* Plaintiffs contend, without elaboration, that their claims in the instant case have not been adjudicated and are based on their own set of facts. Though Plaintiffs' complaint in this case raises new federal claims that apparently were not brought in their state court action, Michigan courts have construed claim preclusion as applying both to claims actually raised in the prior action and to "every claim arising out of the *same transaction* which the parties, exercising reasonable diligence, *could have raised* but did not." *Limbach*,

573 N.W.2d at 340 (quoting *Sprague v. Buhagiar*, 539 N.W.2d 587, 589 (Mich. App. 1995)) (emphasis added). Thus, the fact that the state court complaint did not raise identical claims is not determinative–the issue is whether the claims in both suits arose out of the "same transaction." *See id*.

Michigan courts have applied two tests to determine whether two suits arise out of the "same transaction" for the purposes of claim preclusion. The "same evidence" test examines whether "the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions . . . ." *Adair*, 680 N.W.2d at 397. Michigan courts also apply the "transactional test," which examines whether "different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id.* (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 891 (Ill. 1998)). Under the transactional test, "[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit . . . ." *Id.* (citations and emphasis omitted); *accord Washington v. Sinai Hosp. of Greater Detroit*, 733 N.W.2d 755, 760 (Mich. 2007); *see also Reid v. Thetford Twp.*, 377 F. Supp. 2d 621, 627 (E.D. Mich. 2005) (applying the foregoing Michigan claim preclusion standards).

In this case, the "transaction" is Defendants' improper conduct in connection with the employment and termination of Plaintiffs, from as early as April 2006 until as late as May

2007. Plaintiffs' state court complaint and the federal complaint filed in the instant case recite similar facts and circumstances involving the same individuals. For example, both complaints allege facts related to sexual harassment and a hostile work environment. (Dkt. No. 1, Compl. ¶¶ 27, 28, 30-33; Dkt. No. 3, Ex. A, Compl.¶¶ 67, 83-84.) Also, both complaints mention the same events relating to Plaintiffs' internal complaints to their employers and reports to the Michigan police about suspected violations of law, harassment, and discrimination by Defendants (Dkt. No. 1, Compl. ¶¶ 30-33, 43-44; Dkt. No. 3, Ex. A, Compl. ¶¶ 60, 62-64, 66-68, 69, 72). These events are the basis for the retaliation claims in Counts II and IV. (Dkt. No. 1, Compl. ¶¶ 59, 72.)

The claims asserted by Plaintiffs are also similar. Plaintiffs' original state complaint included claims of: sexual discrimination and age discrimination in violation of Michigan law (similar to the Title VII sex discrimination claim in Count I of the instant case); and violation of the Michigan Whistlebowers' Protection Act, Mich. Comp. Laws § 15.361, *et. seq.*, for placing Plaintiffs on administrative leave in retaliation for reporting suspected violations of law (similar to the retaliation claims in Counts II and IV). The copy of the first amended complaint provided by Defendants also contains a claim of violation of due process under the Fourteenth Amendment based on Defendant Sadowski's firing of Plaintiffs on May 14, 2007 (similar to the due process claim in Count III), though it is unclear whether the court allowed Plaintiffs to assert this claim.[4]

With respect to the time period involved, the Court notes that the original complaint

---

[4] Defendants contend that the state court denied a motion by Plaintiffs to amend their complaint to include a claim of violation of due process.

included events occurring up to its filing date on November 6, 2006, whereas the complaint in the instant case recites a similar factual history, but includes events occurring after that time, particularly the placement of Plaintiffs on unpaid leave, and the alleged firing of Plaintiffs on May 14, 2007. However, these acts are a continuation of the allegedly improper conduct by Defendants with respect to Plaintiffs' employment that was the subject of the state-court action. In particular, Plaintiffs have alleged that the placement on unpaid leave and the firing occurred as a result of events taking place prior to November 2006, events identical to those that were detailed in the state-court complaint. Moreover, these allegedly improper acts occurred while the state action was still pending. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736 (6th Cir. 2002) ("When the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit . . . the victim is obliged to amend his or her initial complaint to add these new allegations. . . . The doctrine of *res judicata* would become meaningless if a party could continue to relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit.").

The original complaint filed by Plaintiffs in their state court action is based on factual allegations that are sufficiently related with respect to "time, space, motivation and origin," to constitute the same transaction for purposes of claim preclusion. The claims involve common events and actors, and generally relate to the improper actions and motivations of Defendants with respect to the employment of Plaintiffs over a one-year period. Accordingly, the claims filed by Plaintiffs' in their state court action and the federal claims at issue in the instant case would have formed a convenient trial unit.

Having found that the two actions are based on the same transaction, the Court must determine if the claims in the instant case are those which Plaintiffs could have raised in the state action. Plaintiffs argue that they could not have brought their Title VII claims in Counts I and II in the state court proceeding because Plaintiffs had not yet received their "right to sue" letters. Right to sue letters are a necessary prerequisite to bringing a claim under Title VII. *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486-66 (6th Cir. 1989). The dates of Plaintiffs' right to sue letters indicate that they were issued after the final judgment in the state action.

The Sixth Circuit has held, in the context of claim preclusion under Tennessee law, that a Title VII claimant must exercise due diligence in seeking a right-to-sue letter. *Heyliger*, 126 F.3d at 856. Like Tennessee courts, Michigan courts also apply a reasonable diligence standard for bringing claims to avoid claim preclusion. *See Adair*, 1470 N.W.2d at 123 ("Res judicata bars every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.") (emphasis added). In an unpublished opinion, the Sixth Circuit has also suggested that reasonable diligence with respect to right to sue letters includes seeking a stay of the state action until the letters are received. *Donald v. Frugal I Inc.*, 74 F. App'x 593, 597 (6th Cir. 2003). However, Defendants have not raised the issue of diligence, and the evidence available to the Court on this motion for summary judgment is insufficient to make a determination on this issue. Thus, the Court will deny Defendants' motion for summary judgment with respect to Counts

I and II because there is an issue of material fact as to whether the Title VII claims are those which Plaintiffs, exercising reasonable diligence, could have raised in their state-court action.

Except for the Title VII claims in Counts I and II, Plaintiffs have not indicated why the other claims in their federal complaint could not have been raised in the state court action. The firing of Plaintiffs occurred in May 2007, while the state action was still pending, at least seven months prior to the trial and judgment in that case. Plaintiffs could have brought any claims with respect to this firing, including the Fourteenth Amendment due process claim in Count III and the First Amendment retaliation claim in Count IV, in the state-court action by amendment to their complaint; state courts have concurrent jurisdiction over § 1983 claims for violation of constitutional rights, as in Counts III and IV of the complaint. *Dorsey v. City of Detroit*, 858 F.2d 338, 340-41 (6th Cir. 1988).[5] *See also Schwartz v. City of Flint*, 466 N.W.2d 357, 360 (Mich. App. 1991) (holding that *res judicata* applies where plaintiff could have included additional claims in the original action by amendment of the complaint). Defendants state that Plaintiffs did seek leave of the court to amend their complaint to include a claim of violation of due process, similar to Count III, but the state court denied this motion. Plaintiffs do not refute this contention. The evidence submitted by Defendants does not indicate why the state court denied Plaintiffs' request. If the court in the prior action denies leave to amend to bring a claim that is later brought in a subsequent action, the reason for the denial may be relevant for claim preclusion analysis. *See Martin v. Deuchler*, 319

---

[5] State courts also have concurrent jurisdiction over Title VII claims, as in Counts I and II. *Heyliger*, 126 F.3d at 854.

N.W.2d 352, 383-84 (Mich. App. 1982) (holding that denial of leave to amend based on futility is subject to claim preclusion, but implying that denial of leave to amend based on other reasons may not be subject to claim preclusion). Thus, there remains an issue of material fact with respect to whether or not Plaintiffs' claim for violation of due process based on the firing of Plaintiffs by Defendants in May 2007 is one which Plaintiffs "could have raised" in their state action. For these reasons, the Court will deny summary judgment with respect to Count III.

Neither the original or the amended version of Plaintiffs' state court complaint contains a retaliation claim based on the First Amendment, though Plaintiffs' original state court complaint alleged a similar claim, retaliation by being placed on administrative leave in November 2006, in violation of the Michigan Whistleblowers' Protection Act. (Dkt. No. 3, Ex. A, Compl. ¶ 102.) Plaintiffs offer no explanation for why the First Amendment retaliation claim in Count IV based on the termination of Plaintiffs' employment in May 2007 is not one that Plaintiffs "could have raised" in their state court action. The delay in receipt of right to sue letters does not apply to the First Amendment retaliation claim. Moreover, there is no indication in the record, and no suggestion by either party, that Plaintiffs attempted to add this claim but the court would not allow it. The fact that the two complaints may be based on different acts of retaliation (*i.e.* placement of Plaintiffs on administrative leave in 2006 in the state-court complaint, and termination of Plaintiffs in 2007 in the federal complaint) does not save Plaintiffs' claim, particularly where both actions

are motivated by events that occurred prior to the filing of Plaintiffs' state action. Nothing in the federal complaint suggests that Defendants terminated Plaintiffs in retaliation for any conduct of Plaintiffs occurring after the state action was filed in November 2006. Moreover, the firing in May 2007 occurred many months before the trial and final judgment in the state proceeding in January and February of 2008. Thus, Plaintiffs could have sought to amend their complaint to include this claim. *See Dubuc*, 312 F.3d at 749 ("When the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit . . . the victim is obliged to amend his or her initial complaint to add these new allegations."). For the foregoing reasons, the Court finds that there is no genuine issue of material fact with respect to whether Count IV is one that Plaintiffs could have raised in their prior state action. The Court will grant summary judgment in favor of Defendants City of Potterville and Potterville City Council with respect to Count IV of Plaintiffs' complaint.

### III.

Defendants have also submitted a motion for costs and attorneys' fees pursuant to Rule 11 of the Federal Rules of Civil Procedure, arguing that the claims in the complaint are frivolous and meritless because they are barred by claim preclusion. (Dkt. No. 4.)

Subsequently, Defendants submitted a letter indicating to the Court that Plaintiff Darrow has filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code, and Defendants have asked the Court to hold their motion for sanctions in abeyance until the trustee for the bankruptcy estate determines its interest in the case. (Dkt. No. 13.)

The Court notes that this case is not a "proceeding *against* the debtor" that would be subject to an automatic stay in bankruptcy, as set forth in 11 U.S.C. § 362(a), because the proceeding was filed *by* the debtor. The Court is mindful that counterclaims against debtors in bankruptcy have been found by some courts to be subject to the automatic stay. *See Koolik v. Markowitz*, 40 F.3d 567 (2d Cir. 1994). But, the Court is not aware of any binding precedent determining that a motion for sanctions under Rule 11 filed against a debtor is subject to an automatic stay in bankruptcy. The Seventh Circuit determined that such a motion in a proceeding filed by the debtor is *not* subject to the stay, because Rule 11 sanctions are essentially a penalty meted out by the government, which makes the motion subject to the governmental police and regulatory power exemption from automatic stays in 11 U.S.C. § 362(b)(4). *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993). Furthermore, there is no indication that Plaintiff Hannahs has filed for bankruptcy.

In any event, Defendants have requested that the Court hold the motion for sanctions in abeyance. The Court will grant this request, but to avoid an unnecessary burden on the Court's docket, the Court will administratively dismiss Defendants' motion for sanctions without prejudice to Defendants to refile their motion at a later time.

An order will be entered that is consistent with this opinion.


Dated: <u>December 22, 2008</u>                    /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE